UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

APR ENERGY, LLC,

    Plaintiff,

vs.                                                    Case No. 3:08-cv-961-J-25MCR

PAKISTAN POWER RESOURCES, LLC, et al.,

    Defendants.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Motion to Dismiss filed by Defendant, Pakistan Power Resources, LLC ("PPR") on February 24, 2009. (Doc. 99). After being provided numerous extensions of time, Plaintiff, APR Energy LLC, filed a response in opposition to the Motion (Doc. 119) on April 6, 2009.

## I. INTRODUCTION

Plaintiff filed a Complaint in this Court on October 7, 2008 against the Defendants, PPR, Walters Power International, LLC ("WPI"), and Associated Group ("AG"), to recover in excess of $2.4 million dollars in damages. The Complaint contained four counts alleging: (1) Breach of Contract for non-payment against PPR; (2) Breach of Covenant of Good Faith and Fair Dealing against PPR; (3) Unjust Enrichment against all Defendants; and (4) Tortious Interference with a Contract against all

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

Defendants. (Doc. 1). On January 20, 2009, Plaintiff filed an Amended Complaint. (Doc. 68). This Complaint contains seven counts, including: (1) Breach of Contract For Non-Payment against all Defendants; (2) Breach of Contract for Delegation Without Consent against all Defendants; (3) Breach of Covenant of Good Faith and Fair Dealing against all Defendants; (4) Unjust Enrichment against WPI and AG; (5) Constructive Trust against WPI and AG; (6) Tortious Interference with Contract against all Defendants; and (7) Fraud in the Inducement against all Defendants. Id.

On February 24, 2009, Defendants filed motions to dismiss the Amended Complaint. (Docs. 99 and 100). In the instant motion, Defendant, PPR moves to dismiss the five counts against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that the Amended Complaint fails to state a claim. PPR also asks the Court to strike Plaintiff's request for attorneys' fees and demand for jury trial. Plaintiff filed a response on April 6, 2009. (Doc. 119). On March 3, 2009, Judge Adams issued an Order (Doc. 101) referring the instant motion to the undersigned for entry of a report and recommendation.

## II. **BACKGROUND FACTS**

Taking the facts in the Amended Complaint as true, the following is a brief factual background for this case. Plaintiff is involved in the power generation business and designs, installs, and operates power plants all over the world. On September 18, 2006, Plaintiff and a public utility owned by the Government of Pakistan, National Transmission and Despatch Co. Ltd. ("NTDC"), contracted to install and operate a power plant in Sheikhupura, Pakistan (the "Bhikhi Power Plant"). NTDC and Plaintiff executed an agreement (the "Rental Agreement") whereby Plaintiff agreed to design,

-2-

install, and operate the Bhikhi Power Plant and NTDC agreed to pay Plaintiff in excess of $100 million over the term of the agreement. Plaintiff alleges Defendants, WP and AG were interested in assisting Plaintiff obtain the contract with NTDC. Indeed, Plaintiff claims that during the process of finalizing the payment guarantees for the Rental Agreement, WP and AG indicated that the Rental Agreement was in danger of early termination due to NTDC's dissatisfaction with Plaintiff's performance. Plaintiff alleges these claims by WPI and AG were false and were used by WPI and AG to induce Plaintiff to assign its rights under the Rental Agreement to WPI and AG.

Thereafter, Plaintiff claims WPI and AG proposed an assignment of Plaintiff's performance obligations under the Rental Agreement. Plaintiff alleges it agreed to an assignment whereby WPI and AG would receive the total rent payments under the Rental Agreement, Plaintiff would continue to provide consulting services for the project, and WPI and AG would pay Plaintiff a total of $7 million. Plaintiff claims WPI and AG did not want to be direct parties to the assignment and therefore, they required Plaintiff to contract with an entity WPI and AG incorporated solely for purposes of the assignment: PPR. PPR has two members, WPI, who owns 35% and AG, who owns 65%. In January 2007, Plaintiff and PPR entered into a written agreement (the "Assignment Agreement") with an effective date of January 17, 2007. Pursuant to the Assignment Agreement, PPR agreed to pay Plaintiff a total of $7 million as follows: (1) $1.6 million at closing of the Assignment Agreement, (2) $800,000 within 15 days of the issuance of the letter of credit under the Rental Agreement, (3) $1.5 million within 5 business days after the Commercial Operation Date, and (4) $3.1 million over a portion of the remaining term of the Rental Agreement at the rate of $100,000 per month for the

period of 31 months from and after the Commercial Operation Date from the proceeds of rental payments under the Rental Agreement. The first and second payments have been paid to Plaintiff. Neither the third nor any portion of the fourth has been paid. As such, Plaintiff argues PPR has breached the Assignment Agreement.

Pursuant to the terms of the Rental Agreement, the Bhikhi Power Plant was to be comprised of three gas powered turbines, each of which was identified as a "Unit." The three Units were identified collectively as the "Equipment." The Rental Agreement required the three Units to be subjected to tests (the "Operational Tests") to determine if the Equipment was capable of achieving the Guaranteed Electrical Output of 136 MW of power at ISO Conditions. If the Equipment met the Guaranteed Electrical Output, it would be deemed accepted by NTDC and to have achieved Commercial Operation. According to Plaintiff, in order to be entitled to the monthly rental, the Equipment needed to be accepted by NTDC. If the results of the Operational Tests showed that the Equipment could generate 136 MW of power under ISO Conditions, the Equipment would be deemed accepted. However, Plaintiff alleges nothing in the Rental Agreement restricted the right of NTDC to accept the Equipment even if 136 MW of power at ISO Conditions could not be established.

Plaintiff points to two letters to PPR from the Pakistan Electric Power Company ("PEPCO"), an agent or principal of NTDC. In the first letter dated February, 1, 2008, PEPCO confirmed acceptance of Units 2 and 3 of the three Units that comprised the Equipment. Unit 3 was accepted with an effective date of December 19, 2007 and Unit 2 was accepted with an effective date of January 22, 2008. The letter further authorized

invoicing for 2/3 of the Monthly Rent as of that date.  The next letter, dated April 11, 2008, indicated that the remaining unit, Unit 1, was accepted as of April 2, 2008.  This letter stated the Operational Test had not been conducted (as a result of a lack of necessary gas) and mentioned the possibility of adjusting the Monthly Rental in the event that upon testing, the Equipment could not attain Guaranteed Output of "136 MW capacity at generator terminals (ISO conditions) within seven (7) days of availability of full gas quota for the three gas turbines." (Doc. 68, Ex.F).  Plaintiff contends these letters establish that the Equipment was accepted by PPR on April 2, 2008, with the acceptance of the last of the three Units, thereby triggering PPR's duty to pay Plaintiff the remaining monies due under the Assignment Agreement.

Alternatively, Plaintiff contends the Commercial Operation Date, the date upon which PPR's obligation to pay the final two payments under the Assignment Agreement was dependent, occurred on July 31, 2008.  Plaintiff points to a provision in the Rental Agreement which provided that the Commercial Operation Date would be attained 120 days after the Effective Date of the Rental Agreement, if the failure of the Equipment to attain Commercial Operation was due to a cause attributable to NTDC.  Plaintiff argues the inability to complete the Operational Tests due to lack of full gas quota necessary to complete the Operational Tests was a cause wholly attributable to NTDC because NTDC had sole responsibility under the Rental Agreement to supply the gas.  According to Plaintiff, all conditions precedent for establishing the Effective Date of the Rental Agreement were satisfied at the latest on April 2, 2008.  One hundred and twenty (120) days after the latest possible date for establishing the Effective Date of the Rental

Agreement was July 31, 2008. Therefore, Plaintiff contends that at the latest, the Commercial Operation Date would be deemed to have been achieved by July 31, 2008. Plaintiff believes there were three possible dates for the Commercial Operation Date for the purposes of the Assignment Agreement: December 19, 2007, April 2, 2008, or July 31, 2008.

Effective April 1, 2008, a company called ProEnergy became the operator of the Bhikhi Power Plant. Neither PPR, WPI, nor AG sought or obtained the consent of Plaintiff before delegating the duty of operation of the Bhikhi Power Plant to ProEnergy. As the Assignment Agreement contained a provision prohibiting it from being assigned without the consent of the other party, Plaintiff contends PPR breached the Assignment Agreement.

### III. ANALYSIS

Defendant PPR seeks to dismiss the counts against it: Count I alleging breach of contract for non-payment, Count II alleging breach of contract for unauthorized assignment of the contract to ProEnergy, Count III alleging breach of the convenants of good faith and fair dealing, Count VI for tortious interference with a business relationship, and Count VII for fraudulent inducement. Additionally, PPR seeks dismissal of Plaintiff's claim for attorneys fees and asks the Court to strike Plaintiff's demand for a jury trial.

In considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the

allegations of the complaint as true, and accept all reasonable inferences drawn from them. La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quoting Omar v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003)). Moreover, the Court must limit its consideration to the complaint and the written instruments attached to it as exhibits. Fed.R.Civ.P. 12(d); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993). The Rule 8 pleading standards have been refined recently by the Supreme Court and although it remains the case that a plaintiff's allegations must be accepted as true, the standard for pleading claims in federal court is no longer the "no set of facts" phraseology of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957). Now, to satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," and where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007).

### A. Count I: Breach of Contract for Non-payment

PPR believes Plaintiff's breach of contract for non-payment claim should be dismissed because pursuant to the Assignment Agreement, it was only obligated to pay Plaintiff the remaining payments after the Commercial Operation Date (as that term is defined in the Rental Agreement) was achieved. PPR asserts that the Commercial Operation Date (the "COD") has not yet been achieved and therefore, its obligation to pay has not yet been triggered. PPR argues the Amended Complaint does not even allege that the COD occurred. Instead, the Amended Complaint refers to the Scheduled Commercial Operation Date, a term PPR notes is not mentioned in the Assignment

-7-

Agreement.  Additionally, PPR argues Plaintiff should be judicially estopped from changing its factual basis and breach of contract theory in the Amended Complaint because Plaintiff obtained a prejudgment writ of garnishment based on its theory that the COD occurred because PEPCO accepted the turbines as opposed to the new theory that COD occurred because of NTDC's failure to provide sufficient gas.

Plaintiff responds it has not changed its theory of the case.  It has always contended and continues to contend that the COD occurred.  Plaintiff claims it has simply provided more detail regarding the three possible dates when the COD was achieved.  Specifically, Plaintiff continues to argue the COD occurred on April 2, 2008, the date when the final Unit of the Equipment was accepted.  The Rental Agreement defines the COD as "the Day following the date upon which the Equipment actually achieves Commercial Operation."  (Doc. 68, Ex. B, p.2).  "Commercial Operation" is defined as "the date upon which APR notifies NTDC in writing that the Equipment has been installed and is ready for the operation and generation of electric power pursuant to this Agreement and the Equipment has been accepted by NTDC in accordance with Section 10 hereof."  (Doc. 68, Ex. B, p.1).  According to Plaintiff, the two letters from PEPCO indicate the Equipment was accepted by NTDC regardless of whether it was able to achieve the Guaranteed Output and as such, PPR has been receiving monthly rental payment for which it must pay Plaintiff a portion.

The Amended Complaint adds an additional possible date for the COD by referencing another provision in the Rental Agreement which provides:

> In the event APR does not achieve Commercial Operation
> by the Scheduled Commercial Operation Date due to

> reasons attributable to NTDC, the Operating Period shall be deemed to have begun as of the Scheduled Commercial Operation Date and Monthly Rental shall be payable in accordance with Exhibit A.

(Doc. 68, Ex. B, p.9). The Scheduled Commercial Operation Date is defined in the Rental Agreement as "120 Days from the Effective Date and such date may be adjusted and extended as set forth in this Agreement." (Doc. 68, Ex. B, p.3). Accordingly, Plaintiff argues that because NTDC failed to provide gas for the testing of the Equipment, the testing was delayed and the Equipment was unable to achieve Commercial Operation by the Scheduled Commercial Operation Date. As such, Plaintiff believes the Operating Period began as of the Scheduled Commercial Operation Date, which Plaintiff claims is July 31, 2008. Plaintiff also takes the position that PPR's arguments for dismissal of Count I are not appropriate for a motion to dismiss because they are instead, a defense to the breach of contract claim.

As an initial matter, while it does appear Plaintiff has added a new theory regarding the COD, the Court sees no reason to estop Plaintiff from advancing this new theory in the Amended Complaint. PPR has provided no authority for such a drastic action and the undersigned does not believe such action would be appropriate. The two cases cited by PPR are not on point. One deals with a party being estopped from changing on appeal a position it took throughout the litigation. The other addresses a criminal action in which the government attempted to advocate a new set of facts to convict different defendants. Here, at the beginning of the case, parties are granted liberal leave to amend their pleadings and as such, the Court will not prevent Plaintiff from presenting a new theory for recovery.

Next, the Court agrees with Plaintiff that PPR's Motion to Dismiss Count I due to the failure of the Bhiki Power Plant to reach "Commercial Operation" is more appropriate for a motion for summary judgment rather than a motion to dismiss. PPR's argument that the COD has not yet occurred is akin to an affirmative defense of a failure of a condition precedent and "[s]atisfaction of conditions precedent [] is not a matter that is adjudicated on a motion to dismiss." Buckley Towers Condominium, Inc. v. QBE Insurance Corp., 2008 WL 2490450, *4 (S.D. Fla. 2008).

The elements of an action for breach of contract under Florida law are: (1) the existence of a valid contract; (2) a breach of the contract; and (3) damages resulting from the breach. Hayes v. Marriott Ownership Resorts, Inc., 2008 WL 2783365, *3 (M.D. Fla. 2008) (citing Friedman v. New York Life Ins. Co., 2008 WL 2435935, at * 1 (Fla. 4th DCA 2008) ("An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages.")). Here, the Amended Complaint adequately alleges these three elements and PPR does not argue otherwise. Instead, PPR argues Plaintiff failed to allege that the Bhiki Power Plant achieved "Commercial Operation," a condition precedent to PPR having to provide Plaintiff with the final two payments in the Assignment Agreement.

Rule 9(c) of the Federal Rules of Civil Procedure provides:

> In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

Rule 9(c), Fed.R.Civ.P. As Rule 9(c) makes clear, conditions precedent need only be alleged generally. If a defendant disagrees with the plaintiff's general allegations, it may deny "with particularity" in a responsive pleading that the preconditions have been fulfilled. See Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1010 (11th Cir. 1982). The plaintiff then bears the burden of "proving that the conditions, which the defendant has specifically joined in issue, have been satisfied." Id. at 1010.

In the present case, the Amended Complaint generally alleges satisfaction of all conditions precedent by stating, "[a]ll conditions precedent to the bringing of this action have occurred, have been performed, or have been waived." (Doc. 68, ¶21). This is sufficient as a matter of pleading under Rule 9(c). See Buckley Towers, 2008 WL 2490450, at *5. Now, PPR may respond with particularity that the conditions precedent to it having to pay Plaintiff pursuant to the Assignment Agreement have not yet occurred. Then, at the summary judgment stage, when Plaintiff must first show that all conditions precedent have occurred, the Court will decide if such is the case. Id. Accordingly, PPR's Motion to Dismiss with respect to Count I should be denied at this point.

**B.     Count II: Breach of Contract for Delegation Without Consent**

PPR argues Count II should be dismissed because PPR's retention of ProEnergy does not constitute an "assignment" of the Assignment Agreement and therefore, no breach of the Assignment Agreement has occurred. Specifically, PPR claims Florida law defines an assignment as a transfer of all of the interests and rights to the thing assigned and because Plaintiff has not alleged "ProEnergy stepped into the shoes" of

-11-

PPR and that PPR "relinquished all of its interests in the Assignment Agreement when it retained ProEnergy," Count II fails as a matter of law. (Doc. 99, p.19).

Plaintiff responds that once again, PPR's position that no assignment occurred is nothing more than a defense to the breach of contract claim and is not a reason for dismissal. Plaintiff argues it is not required at this stage to prove the breach, but rather, simply to allege the breach. Additionally, Plaintiff points to caselaw stating that a contract provision prohibiting assignment of the contract bars only the assignment of the performance by the assignor, but does not prohibit assignment of the right to receive payments. Accordingly, Plaintiff argues there was no requirement for it to allege that all of PPR's interests and rights were transferred to ProEnergy. Instead, the Amended Complaint's allegations that PPR transferred the responsibility to operate the Bhikhi Power Plant to ProEnergy without Plaintiff's permission were sufficient.

The Court finds the Amended Complaint adequately alleges a breach of contract claim. As noted above, to plead breach of contract, the complaint need only allege: (1) the existence of a valid contract; (2) a breach of the contract; and (3) damages resulting from the breach. Again, the Amended Complaint sufficiently alleges these elements. The question of whether PPR's assignment of the responsibility to operate the Bhikhi Power Plant to ProEnergy constitutes an assignment prohibited by the Assignment Agreement is one that is more properly decided on summary judgment. As such, the Court finds Plaintiff has sufficiently plead a breach of contract claim for the delegation to ProEnergy and will recommend denial of PPR's motion to dismiss insofar as it relates to Count II.

**C.    Count III: Breach of the Covenant of Good Faith and Fair Dealing**

PPR asks the Court to dismiss this count on the grounds that a claim for breach of the covenant of good faith and fair dealing is not an independent action, but must be coupled with a viable breach of contract claim. (Doc. 99, p.20). PPR argues that because neither Counts I or II are viable, Count III must necessarily be dismissed. As the undersigned finds both breach of contract claims have been sufficiently pled to withstand PPR's motion to dismiss, the Court finds PPR's request to dismiss Count III is also due to be denied.

**D.    Count VI: Tortious Interference with a Business Relationship**

PPR argues Plaintiff's Tortious Interference with a Business Relationship claim should be dismissed because it is barred by the economic loss rule. PPR points out Florida law holds that where a "tort claim does not cause harm distinct from that created by a breach of contract claim, Florida's economic loss rule bars the assertion of the separate tort action." (Doc. 99, p.21). PPR claims Plaintiff's damages for the alleged tortious interference are identical to the damages claimed for the breach of contract and as such, the tort claim should be barred.

Plaintiff responds that its claim for tortious interference relies on different facts and requests different damages than the breach of contract claims. Specifically, the Amended Complaint alleges Plaintiff had a business relationship with NTDC (namely the Rental Agreement) of which the Defendants knew and that Defendants, WPI and AG, intentionally interfered with that relationship by telling Plaintiff its contract with NTDC was in jeopardy of early termination due to NTDC's dissatisfaction with Plaintiff's

performance.  Thereafter, Defendants induced Plaintiff to enter into the Assignment Agreement, thereby depriving Plaintiff the opportunity to earn the entire $100 million it could have earned under the Rental Agreement.

The Court finds the Amended Complaint sufficiently alleges the elements of a tortious interference claim and agrees with Plaintiff that the claim for tortious interference is based on different facts and seeks different damages from the breach of contract claims.  The tortious interference claim focuses not on Defendants' behavior in performing the Assignment Agreement, but rather on Defendants' conduct in communicating false statements regarding NTDC's intentions with respect to the Rental Agreement and with possibly communicating with NTDC regarding Plaintiff.  As such, the tortious interference claim is not barred by the economic loss rule.  See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996) ("The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action.  Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.").  However, the Amended Complaint does not sufficiently allege PPR (as opposed to WPI and AG) intentionally interfered with Plaintiff's relationship with NTDC and as the Amended Complaint alleges PPR was created "solely for the purpose of effecting the assignment of the Rental Agreement" (Doc. 68, ¶37), the Court believes it would not be possible for PPR to have so interfered.  As such, the Amended Complaint fails to state a claim against PPR for

intentional interference with a business relationship and Count VI should be dismissed against PPR.

## E. Count VII: Fraudulent Inducement

Similarly, PPR asks the Court to dismiss Plaintiff's claim for fraud in the inducement as being barred by the economic loss rule and additionally, because it is contradictory to the Assignment Agreement's merger and integration clauses. PPR notes the Assignment Agreement contains provisions whereby Plaintiff agreed that it did not rely on any representation, expressed or implied, of any kind whatsoever, when it entered into the Assignment Agreement and that there were no other "agreements, understandings, warranties, representations, covenants, obligations, promises, assurances or conditions precedent or subsequent or otherwise, except those expressly set out in this Agreement." (Doc. 68, Ex. A, p.16, 18).

Plaintiff responds that the merger clause does not bar the fraudulent inducement claim because the merger clause "only applies where the alleged misrepresentations are also contained in the written contract." (Doc. 119, p.25). Additionally, Plaintiff again argues the fraudulent inducement claim is distinct from the breach of contract claim and therefore, is not barred by the economic loss rule.

As an initial matter, the Court notes that the Amended Complaint properly alleges the elements necessary for a fraudulent inducement claim and PPR does not argue otherwise. Additionally, as noted above, the economic loss rule does not bar a fraudulent inducement claim that is based on facts distinct from the breach of contract. HTP, Ltd., 685 So.2d at 1239. With respect to PPR's argument that the fraudulent

inducement claim is barred by provisions in the Assignment Agreement, the Court agrees with Plaintiff.  The cases cited by PPR hold that "[w]hen alleged misrepresentations 'are discussed and incorporated into a written contract containing a merger clause that supercedes all prior representations and agreements, the economic loss rule bars recovery for fraudulent inducement.'"  North American Clearing, Inc. v. Brokerage Computer Systems, Inc., 2008 WL 341309, *3 (M.D. Fla. 2008) (quoting Topp, Inc. v. Uniden America Corp., 513 F.Supp.2d 1345, 1348 (S.D. Fla. 2007)); see also, Ben-Yishay v. Mastercraft Development, LLC, 553 F.Supp.2d 1360, 1370 (S.D. Fla. 2008) (same).

Here, the Amended Complaint alleges three specific ways in which Defendants fraudulently induced Plaintiff to enter into the Assignment Agreement.  First, it alleges WPI and AG misrepresented that NTDC was unhappy with Plaintiff's performance and was contemplating early termination of the Rental Agreement. (Doc. 68, ¶¶ 148, 149). Next, it alleges WPI, AG and PPR misrepresented that they would pay Plaintiff $7 million for the assignment of Plaintiff's rights under the Rental Agreement.  (Doc. 68, ¶¶ 150-153).  Finally, the Amended Complaint alleges WPI, AG and PPR misrepresented that performance of the duties delegated to PPR under the Rental Agreement would be performed by PPR when in fact, Defendants intended to contract with a third party to operate the Bhikhi Power Plant.  (Doc. 68, ¶¶ 154-156).  The first theory, that WPI and AG misrepresented NTDC was unhappy with Plaintiff's performance in order to induce Plaintiff to enter into the Assignment Agreement, alleges facts distinct from the allegations regarding the breach of contract and as such, the economic loss rule would

not bar this claim.  However, the two other theories are both predicated upon the same facts raised in the breach of contract claims and both allege misrepresentations which are contained in the Assignment Agreement.  As such, these theories would be barred by the economic loss rule and are due to be dismissed.  As the only allegations concerning PPR arise pursuant to these last two theories, Count VII is due to be dismissed against PPR.

**F.     Plaintiff's Claims for Attorneys' Fees and Jury Trial**

Finally, PPR argues the Court should dismiss or strike both Plaintiff's claims for attorneys' fees and its request for a jury trial.  With respect to Plaintiff's claims for attorneys' fees, PPR notes that Plaintiff seeks fees pursuant to Florida Statute §57.105, which permits the award of attorneys' fees as sanctions for raising unsupported claims or defenses.  As PPR has not yet filed its answer, it has raised no defenses and therefore, the request for such fees in the Amended Complaint is improper.  Rather than respond to this argument, Plaintiff alleges PPR "has made numerous unsupported arguments, advanced baseless and frivolous positions, and raised defenses that are not viable grounds for dismissal in its MTD."  (Doc. 119, p.27).  Accordingly, Plaintiff asks the Court to order PPR to pay Plaintiff its attorneys' fees in responding to the Motion to Dismiss.  (Doc. 119, p.28).

The Court believes Plaintiff's request for attorneys' fees pursuant to Florida Statute §57.105 should be stricken.  As this Court noted in <u>Gibson v. Monaco Coach Corp.</u>, 2006 WL 2092640, at *3 (M.D. Fla. 2006), Florida Statute §57.105(4) contains a "safe harbor" provision requiring a party seeking sanctions to provide twenty-one (21)

days for the challenged defense, contention, allegation, or denial to be withdrawn or corrected. Id. Like the instant case, the defendant in Gibson had not yet filed an answer and therefore, the Court granted the defendant's motion to strike the request for attorneys' fees in the complaint as being premature and failing to comply with the safe harbor provision of the statute. Id. Likewise, the undersigned believes Plaintiff's request for attorneys' fees in the Amended Complaint should be stricken. The Court notes that pursuant to the terms of the statute, Plaintiff need not include a demand for attorneys' fees in its complaint, but rather, is free to file a motion seeking such at a later date. See Fla. Stat. §57.105(1).[2]

As for Plaintiff's request for a jury trial, PPR argues Plaintiff waived its right to a jury trial in the Assignment Agreement. Plaintiff does not dispute this allegation but instead states it will agree to strike the demand for a jury trial if WPI and AG will concede they are also parties to the Assignment Agreement. (Doc. 119, p.28). As Plaintiff has clearly waived its right to a jury trial, the Court finds it is appropriate to grant PPR's motion and to strike the demand for a jury trial.

Accordingly, after due consideration, it is

**RECOMMENDED**:

---

[2] To the extent Plaintiff asks this Court to award sanctions pursuant to §57.105 as a result of the positions taken by PPR in the instant motion, the Court will decline to do so. Under §57.105, the Court may only award attorneys' fees to the "prevailing party" and in order for there to be a "prevailing party," "there must necessarily be a disposition of the case." Ruppel v. Gulf Winds Apartments, Inc., 508 So.2d 534, 535 (Fla. 2d DCA 1987) (hodling that court erred in awarding attorneys' fees for unsuccessful motion to dismiss) (citing Steinhardt v. Eastern Shores White House Association, Inc., 413 So.2d 785, 786 (Fla. 3d DCA 1982)).

Defendant, PPR's Motion to Dismiss (Doc. 99) be **GRANTED in part and DENIED in part**. Plaintiff's claim for tortious interference with a business relationship against PPR should be dismissed as failing to state a claim. Plaintiff's claim for fraudulent inducement against PPR should be dismissed as it is barred by the economic loss rule. Additionally, Plaintiff's claims for attorneys' fees pursuant to Florida Statute §57.105 as well as Plaintiff's demand for a jury trial should be stricken. In all other respects, the Motion to Dismiss should be denied.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  21st  day of May, 2009.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Henry Lee Adams, Jr.,
   United States District Judge,

Counsel of Record